CONOVER v. NEWTON

BIRCH A. ALLMAN, DESSIE B. ALLMAN, BEN E. ISENHOUR, ANNA WYATT ISENHOUR, WADE F. LINEBERGER AND EVELYN B. LINEBERGER v. THE CITY OF NEWTON

IN RE: ANNEXATION ORDINANCE ADOPTED BY THE CITY OF CONOVER, NORTH CAROLINA, 11 MAY 1978

No. 112

(Filed 12 July 1979)

1. **Rules of Civil Procedure § 56.1— conversion of motion for judgment on pleadings into motion for summary judgment—notice**

   Assuming that the conversion of a Rule 12(c) motion for judgment on the pleadings into a Rule 56 motion for summary judgment by the court's consideration of matters outside the pleadings brings into effect the ten day procedural notice requirement of Rule 56(c), defendant was not prejudiced by the lack of ten days notice of the hearing on plaintiffs' motion where the record shows that plaintiffs testified at the hearing and were extensively cross-examined, there was no factual controversy but the questions presented were clearly defined questions of law, and the law as it related to these questions was ably argued by counsel for both plaintiffs and defendant.

2. **Rules of Civil Procedure § 56.1— summary judgment while discovery procedures pending**

   While ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures which might lead to the production of evidence relevant to the motion are still pending and the party seeking discovery has not been dilatory in doing so, the court's action in hearing plaintiffs' motions for summary judgment while discovery procedures initiated by defendant were still pending did not constitute prejudicial error where information sought by defendants' interrogatories to plaintiffs was brought out at the hearing by defendants' cross-examination of plaintiffs, and where seven of the nine individuals sought to be deposed by defendant testified at the hearing and were extensively questioned by counsel for defendant, and their testimony revealed that no factual questions were presented for decision.

3. **Rules of Civil Procedure § 56— summary judgment on grounds not stated in motion**

The granting of summary judgment on grounds other than those raised in the written motion for summary judgment would not have been improper, since Rule 56 does not require that any grounds be stated in the motion. Furthermore, where the issue raised by the motion for summary judgment was whether a petition for voluntary annexation was signed by all owners of realty within the described area, the granting of summary judgment on grounds that the withdrawals of signatures therefrom rendered the petition insufficient was within the issue raised by the motion.

4. **Municipal Corporations § 2— voluntary annexation petition—withdrawal of signatures**

Property owners who have signed a voluntary annexation petition have the right to withdraw from the petition at any time up until the governing municipal body has taken action upon the petition by annexing the area described in the petition.

5. **Municipal Corporations § 2— voluntary annexation petition—withdrawal of signatures—invalidity of entire ordinance**

When six owners of real property located within the area described in a voluntary annexation petition validly withdrew their signatures from the petition before the annexation ordinance was passed, the city governing body was without jurisdiction to take any further action on the petition as submitted, and the entire ordinance purporting to annex all of the area described in the petition was void.

6. **Municipal Corporations § 2.1— involuntary annexation—error in description in resolution of intent to annex**

The fact that the metes and bounds description in a resolution of intent to annex failed to close because one small piece of property was not included within it was not fatal to the validity of the annexation ordinance where the resolution of intent and the published notice of public hearing made full reference to a map which was available for public inspection of the area proposed to be annexed, and this map and a map published in the newspaper notice of the public hearing showed all of the property proposed to be annexed.

7. **Municipal Corporations § 2.3— annexation ordinance—use of natural topographic features as boundaries—inclusion of property on both sides of streets**

The evidence supported the trial court's determination that an annexation ordinance substantially met the requirements of G.S. 160A-36(d) that natural topographic features be used in fixing new municipal boundaries whenever practical and that developed land on both sides of a street used as a boundary be included within the municipality.

8. **Municipal Corporations § 2.1— amendment of annexation report**

An amendment of an annexation report after the public hearing but before passage of the annexation ordinance to reflect minor changes in the

financing of services for the current fiscal year in the area proposed to be annexed and to reflect a reduction in size of the area to be annexed was within the amendment authorization of G.S. 160A-37(e) and did not affect the validity of the annexation ordinance.

APPEAL by defendant City of Newton in Case No. 78CVS742, defendant City of Newton in Case No. 78CVS739, and by petitioners in Case No. 78CVS893 from orders of *Ervin, Judge,* entered 11 August 1978. Discretionary review of all three cases prior to determination by the Court of Appeals was allowed 6 March 1979.

These three cases arise out of an involuntary annexation proceeding intitiated by the City of Conover pursuant to G.S. §§ 160A-33 through 44 and out of a voluntary annexation proceeding instituted pursuant to G.S. § 160A-31 by certain property owners seeking to be annexed to the City of Newton. For purposes of brevity the cases will be referred to throughout this opinion as *Conover v. Newton, Allman v. Newton, and In Re: Annexation Ordinance of Conover.*

On 3 April 1978 the City Council of the City of Conover passed a resolution at a regular meeting giving notice of intent, as required by G.S. § 160A-37(a), to annex 792 acres of land contiguous to the existing city limits of Conover. The notice of intent set 3 May 1978 as the date for the required public hearing on the annexation proposal. It, therefore, contained a description of the boundaries of the area to be annexed. Notice of the hearing and a description of the area to be annexed, including a map, were published in a qualified newspaper as required by G.S. § 160A-37(b), and the annexation report required by G.S. § 160A-35 was made available for public inspection with proper notice of its availability given.

On 3 May 1978 a public hearing was held on the Conover Annexation proposal. On 11 May 1978, pursuant to G.S. § 160A-37(e), the Conover City Council amended the annexation report required by G.S. § 160A-35 and adopted an ordinance annexing the area described in the report as amended.

"Meanwhile, back at the ranch," on 19 April 1978 twenty-one owners of real property (some of whom owned property in the area proposed to be annexed involuntarily by Conover, and some

of whom did not) submitted a petition seeking voluntary annexation of their property by the adjoining City of Newton pursuant to G.S. § 160A-31. The sufficiency of the petition was certified by the city clerk of Newton on the same day. On 2 May 1978 a public hearing on the voluntary annexation petition was held. At this hearing, four individuals who had signed the petition, Ben E. Isenhour, Anna Wyatt Isenhour, Birch A. Allman, and Dessie B. Allman, submitted written requests that their names and property be removed from the petition. The hearing was then recessed until 3 May 1978.

When the hearing was reconvened on 3 May 1978, two other individuals who had signed the voluntary annexation petition, Wade F. Lineberger and Evelyn B. Lineberger, submitted written requests that their names and property be removed from it. The effect of these withdrawals, if valid, was to sever the major part of the area described in the voluntary petition into two tracts, one still contiguous to the City of Newton and one not. Giving no effect to these withdrawals, the City of Newton passed an ordinance on 3 May 1978 annexing all of the area described in the voluntary petition, including that property owned by the individuals who sought to withdraw. A portion of the area annexed by Newton was within the area sought to be, and subsequently, annexed by Conover on 11 May 1978, pursuant to its involuntary annexation proceeding.

On 17 May 1978 the City of Conover filed suit against the City of Newton seeking a declaratory judgment that the Newton annexation ordinance of 3 May 1978 was void. A temporary restraining order was issued against Newton. On the same date the six property owners who notified the City of Newton of the withdrawal of their names and property from the voluntary annexation petition filed suit against the City of Newton seeking a similar declaratory judgment.

On 8 June 1978 thirty-three owners of real property in the area annexed by Conover filed a petition for review of Conover's annexation ordinance, as provided for by G.S. § 160A-38(a). This review proceeding was calendared for a hearing on 31 July 1978.

On 25 July 1978 Conover filed a motion for partial summary judgment in *Conover v. Newton* and a motion to consolidate the three pending cases. On 27 July 1978 the plaintiffs in *Allman v.*

*Newton* filed notice of hearing on a motion for judgment on the pleadings, setting 31 July 1978 as the date for hearing.

On 31 July 1978 a hearing was held before Judge Ervin in the review proceeding brought by petitioners against the City of Conover. The court allowed Conover's motion to consolidate the three cases and proceeded to hear plaintiffs' motion for judgment on the pleadings in *Allman v. Newton* (converting it to a motion for summary judgment by considering matters outside the pleadings) and plaintiff's motion for partial summary judgment in *Conover v. Newton* as well as the evidence in the review proceeding.

Judgments in the three cases were filed 11 August 1978. In *Allman v. Newton* the court granted plaintiffs' converted motion for summary judgment ruling that the withdrawals of their signatures by the plaintiffs were valid and that the Newton annexation ordinance was rendered completely void thereby. In *Conover v. Newton* the court granted plaintiff's motion for partial summary judgment on the same grounds. The court entered judgment against the petitioners in *In Re: Annexation Ordinance of Conover*, ruling that Conover's involuntary annexation proceeding complied with all statutory requirements.

*Sigmon & Sigmon by Jesse C. Sigmon, Jr. and Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr., for appellant-City of Newton.*

*Corne & Pitts by Larry W. Pitts for appellant-petitioners.*

*Williams, Pannell & Lovekin by Martin C. Pannell; Patton, Starnes & Thompson by Thomas H. Starnes; and Lake & Nelson by Broxie J. Nelson for appellee-City of Conover.*

*Isenhour & Long by David L. Isenhour for appellees-Allman, et al.*

BROCK, Justice.

Appellant-Newton first raises a series of procedural assignments of error, which it is contended require this Court to reverse the superior court's orders in *Allman v. Newton* and *Conover v. Newton*. These assignments of error although made on independent grounds are closely related in nature and will be considered together.

First, appellant-Newton contends that the trial court committed prejudicial error by proceeding to hear the plaintiffs' converted motion for judgment on the pleadings in *Allman v. Newton* in that Newton was not given the requisite notice of such hearing. Second, appellant-Newton contends that the trial court committed prejudicial error by proceeding to hear the converted motion for judgment on the pleadings in *Allman v. Newton* and the motion for partial summary judgment in *Conover v. Newton* because there were discovery proceedings, initiated by Newton, pending in both cases at the time the court heard the motions. Third, appellant-Newton contends that the grant of summary judgment in *Conover v. Newton* should be reversed because it was entered on grounds other than those raised in Conover's written motion.

[1] A motion for judgment on the pleadings in *Allman v. Newton* was filed on 27 July 1978, setting 31 July 1978 as the date for a hearing on it. At the hearing on 31 July 1978 the motion was converted to a motion for summary judgment pursuant to N.C. R. Civ. P. 12(c) when the court proceeded to consider matters outside the pleadings, *i.e.*, the testimony of plaintiffs in the case. Rule 12(c) provides that when a motion for judgment on the pleadings is converted to a Rule 56 motion for summary judgment "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Assuming that the conversion of a Rule 12(c) motion for judgment on the pleadings into a Rule 56 motion for summary judgment brings into effect the ten day procedural notice requirement of Rule 56(c), *see Long v. Coble*, 11 N.C. App. 624, 182 S.E. 2d 234, *cert. denied* 279 N.C. 395, 183 S.E. 2d 246 (1971) and 5 *Wright & Miller, Federal Practice and Procedure*, § 1371, p. 704 and § 1366, p. 683 n. 72 (citing cases interpreting the similar language in Fed. R. Civ. P. 12(b)(6) ), we do not think the court's failure in this instance to allow such constitutes reversible error.

It is apparent from the record in these three cases that all of the evidence obtainable by way of the discovery procedures initiated by appellant-Newton was fully developed at the hearing on the motions. In *Allman v. Newton* the sole attempt at discovery intended to lead to the production of evidence for the purpose of opposing a motion for either judgment on the pleadings or a motion for summary judgment was a set of interrogatories directed to plaintiffs in the case. At the hearing on the converted motion

for judgment on the pleadings, all plaintiffs, with the exception of Anna Wyatt Isenhour, testified and were extensively cross-examined about their initial decision to sign the petition for voluntary annexation by Newton and their subsequent decision to withdraw. The record reveals, furthermore, that there was no factual controversy to be decided.[1]

The questions presented by the converted motion in *Allman v. Newton* were clearly defined questions of law. Did the plaintiffs have the right to withdraw their signatures, and, if so, what was the effect on the Newton annexation ordinance? The law as it related to these questions was ably argued by counsel for both plaintiffs and defendant. We do not think appellant-Newton was, therefore, prejudiced by the lack of ten days notice of the hearing on plaintiffs' motion. *See Oppenheimer v. Morton Hotel Corp.,* 324 F. 2d 766 (6th Cir. 1963); *LeFevre v. Reliable Paint Supply Co.,* 152 Misc. 594, 273 N.Y.S. 903 (1934); 10 *Wright & Miller, supra,* § 2719, p. 452.

[2] Appellant-Newton's second procedural contention is also without merit. Ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so. *Bane v. Spencer,* 393 F. 2d 108 (1st Cir. 1968), *cert. denied* 400 U.S. 866, 91 S.Ct. 108, 27 L.Ed. 2d 105 (1970); *Joyner v. Hospital,* 38 N.C. App. 720, 248 S.E. 2d 881 (1978); 10 *Wright & Miller, supra,* § 2741, p. 731. But despite the fact that discovery procedures initiated by Newton were still pending at the time the court proceeded to hear the motions for summary judgment in *Allman v. Newton* and *Conover v. Newton,* we do not think that, in this instance, the court's action constitutes reversible error.

In *Allman v. Newton,* appellant-Newton had filed interrogatories to all plaintiffs. As noted *supra,* all plaintiffs, with the exception of one, testified at the hearing and were extensively cross-examined by counsel for appellant-Newton about their deci-

---

1. We note that this fact disposes as well of appellant-Newton's contention that it was entitled to a jury trial on the issue, raised in Newton's amended answer in *Allman v. Newton,* of whether or not the withdrawals of their signatures by the plaintiffs were fraudulently induced. The evidence presented at the hearing on the motion reveals that the plaintiffs' decisions to withdraw were based solely on their beliefs that they had been misled when they initially signed the petition. No evidence of fraudulent inducement to withdraw their signatures was presented.

sions to withdraw from the voluntary annexation petition. The interrogatories directed to these plaintiffs by appellant-Newton appear in the record and reveal that their sole purpose was to elicit information about the plaintiffs' decisions to withdraw. Appellant-Newton's counsel ably brought out this information by cross-examining plaintiffs at the hearing, and we do not think the fact that this information came out in this fashion, rather than by way of answers to the interrogatories filed, prejudiced appellant-Newton.

In *Conover v. Newton,* appellant-Newton filed on 28 July 1978 a notice of intent to take depositions of various elected and appointed officials of the City of Conover. None of these individuals had been deposed at the time the court proceeded to hear and rule on Conover's motion for partial summary judgment. For the same reasons set out above, we do not feel this error prejudiced appellant-Newton. Seven of the nine individuals sought to be deposed testified at the consolidated hearing and were extensively questioned by counsel for appellant-Newton. Their testimony clearly reveals that no factual questions were presented for decision. Furthermore, the court reserved ruling on the motion until 11 August 1978 in order that appellant-Newton might file further affidavits in opposition to the motion. No such affidavits were filed until 14 August 1978. This assignment of error, for the reasons stated, is overruled.

[3]   Appellant-Newton's assignment of error to the grant of summary judgment in favor of Conover on grounds other than those raised in Conover's written motion for summary judgment is also overruled. We note first that Rule 56 does not require any grounds be stated in a motion for summary judgment. Furthermore, the issue raised by Conover's motion was whether the petition for voluntary annexation by Newton was signed by all owners of real property within the area described in it. The grant of summary judgment in favor of Conover on grounds that the withdrawals by the plaintiffs in *Allman v. Newton* rendered the petition insufficient was clearly within the issue raised by Conover's motion.

Having considered the procedural errors raised by appellant-Newton and finding them to be without merit, we now proceed to consider appellant-Newton's contention that there was error in

the court's ruling that Newton's entire annexation ordinance was void and the grant of summary judgment for plaintiffs in *Conover v. Newton* and *Allman v. Newton* on that basis. This assignment of error is two-pronged. Appellant-Newton first contends that the court erred in ruling that the property owners had the right to withdraw from the voluntary annexation petition. Second, appellant-Newton contends that even if such ruling was correct, the court erred in holding that the entire Newton annexation ordinance was void. Appellant's contention is that a correct application of the law requires that only that part of the annexation ordinance, which includes the area that became non-contiguous to the City of Newton as a result of the withdrawals (including that property owned by those who withdrew), should be void. We find both of these contentions to be without merit.

The superior court considered its ruling that the property owners had the right to withdraw to be dispositive of the motions in both *Allman v. Newton* and *Conover v. Newton*. With this consideration we agree. G.S. § 160A-31. Annexation by Petition.—(a) provides "[t]he governing board of any municipality may annex by ordinance any area contiguous to its boundaries upon presentation to the board of a petition signed by the owners *of all* the real property located within such area. The petition *shall* be signed by *each* owner of real property in the area. . . ." (Emphasis added.) Thus, the statutory provision pertinent to this appeal is the requirement that the petition be signed by *all* of the owners of real property located within the area described in the petition submitted to the governing board of a municipality.

It is uncontroverted that six owners of real property located within the area described in this petition, who had originally signed it, withdrew at the public hearing on it, which is required by G.S. § 160A-31(c). It is also uncontroverted that the City of Newton passed an ordinance on 3 May 1978 annexing all of the area described in the petition as originally submitted, including the property of those who sought to withdraw. Thus, the first question to be answered is did the property owners who withdrew from the petition have the right to do so at the time they withdrew?

G.S. § 160A-31(d) provides that at the required public hearing on a petition for voluntary annexation, "all persons owning prop-

erty in the area to be annexed who allege an *error* in the petition shall be given an opportunity to be heard. . . ." (Emphasis added.) Appellees contend this phrase provides statutory authorization for withdrawal from the petition at the time of the public hearing. Appellant-Newton insists that interpretation is incorrect and contends that the phrase operates as a limitation on what may be raised at the time of the hearing, precluding withdrawal from the petition. *Webster's Third New International Dictionary* defines error as "an act involving an unintentional deviation from truth or accuracy." While this definition does not encompass the situation presented here, the withdrawal of signatures originally affixed to the petition, nevertheless, appellant-Newton's contention that the phrase operates implicitly as a limitation on the right to withdraw is without merit. G.S. § 160A-31(d) also provides that the governing board to which a voluntary annexation petition is submitted shall determine, *after holding the required public hearing on the petition,* whether the statutory requirements relating to the sufficiency of it are met. This portion of the statute would appear to authorize, by implication, withdrawals up until the time at which the hearing is concluded. Such an implied statutory right of withdrawal is supported by the fact that it may only be at the public hearing on the proposed annexation that petitioners are made aware of the full ramifications of it. Because we find support for a more extensive right of withdrawal in our case law, however, we do not find it necessary to rely on such an implied statutory right.

Appellant-Newton has made a valiant effort to distinguish the case of *Idol v. Hanes,* 219 N.C. 723, 14 S.E. 2d 801 (1941) on its facts, but we believe the case provides controlling precedent and clearly establishes, absent legislative proscription, the right to withdraw from a petition of the nature involved here.

*Idol* involved the creation of a sanitary district by voluntary petition as authorized by 1927 N.C. Session Laws, Ch. 100. The signatures of fifty-one per cent of the resident freeholders in the proposed district were required before a board of county commissioners was authorized to act on the petition. The petition in *Idol* was initially signed by more than the requisite fifty-one per cent, but prior to the public hearing on creation of the district, a sufficiently large number of individuals sought to withdraw their

signatures such that the fifty-one per cent requirement would no longer be met if the withdrawals were valid.

The Commissioners proceeded to approve the petition notwithstanding the requested withdrawals. On appeal to this Court by the Commissioners from an injunction issued against them, this Court held that "the better rule is that the individual petitioner may as of right withdraw his name from the petition at any time before final action thereupon. . . ." *Id.* at 726, 14 S.E. 2d at 803. In reaching this decision, Seawell, J., observed:

> "It is supposed that second thoughts are apt to be sounder, and this conviction has led courts to consider the right of withdrawal favorably, both as a matter of justice to the individual, who is entitled to apply his best judgment to the matter in hand, and as sound policy in community and public affairs, where the establishment of governmental institutions should rest upon mature consideration rather than be mere unnecessary excrescences upon the body politic, raised by the whim and fancy of a few men." *Id.* at 725, 14 S.E. 2d at 802.

We think both considerations relied upon in *Idol,* justice to the individual and policies favoring the establishment of governmental institutions only upon mature consideration, are equally applicable to a voluntary annexation petition. The first consideration is applicable by the very nature of the annexation proceeding authorized by the statute, *i.e., voluntary* annexation by the consent of *all* property owners in the area proposed to be annexed. Because the annexation of an area by a municipality involves substantially more extensive consequences and obligations, application of the second consideration is even more appropriate than it was in *Idol* in which only the establishment of a single-purpose district was involved.

We are not unmindful of the consequences of the fact that the statute involved in *Idol* required the signatures of only fifty-one per cent of the resident freeholders in the proposed sanitary district, whereas the statute providing for voluntary annexation requires the signatures of one hundred per cent of the owners of real property in the area proposed to be annexed. One or more unwilling property owners are in a position, thereby, to thwart

the aspirations of the majority in a given area who seek voluntary annexation. But, "the defeat of an aspiration is not the destruction of a right." *Idol, supra*, at 725, 14 S.E. 2d at 803. The percentage required is a matter for legislative judgment, and in this instance it is clear that the legislature intended voluntary annexation to be accomplished only upon unanimous consent. Absent statutory prohibition on the right to withdraw from a voluntary annexation petition after it has been submitted but final action has not yet been taken on it, we think the considerations articulated in *Idol* support the right of individual petitioners to reconsider their initial decision and withdraw from the petition at any time before final action thereupon. In a situation, such as is presented here, in which an area is faced with involuntary annexation proceedings by one municipality, it is not unlikely that an individual's initial decision to sign a petition for voluntary annexation by an adjacent municipality as an alternative will be influenced by misinformation and even high pressure tactics employed by those actively seeking to promote the alternative annexation.

The question of whether a petitioner had the right to withdraw from an annexation petition has been extensively considered by courts in other jurisdictions as well. "Although persons signing a petition have been permitted to withdraw their names, sometimes as a matter of right, within a limited time after signing, the right to withdraw their names has been denied, particularly after a hearing on the petition, or when the withdrawal would deprive the body with which the petition was filed of jurisdiction." *E. McQuillin, The Law of Municipal Corporations*, § 7.33, pp. 449-50 (3d ed. 1966). *See Annots.*, 126 A.L.R. 1031, 27 A.L.R. 2d 604. In *Town of Blooming Grove v. Madison*, 253 Wis. 215, 33 N.W. 2d 312 (1948), it was held that where no rights of others are established until final action is taken upon an annexation petition, a person signing the petition may withdraw at any time prior to such final action. *Accord. Crocher v. Abel*, 348 Ill. 269, 180 N.E. 852 (1932); *Crosthwait v. White*, 55 N.M. 71, 226 P. 2d 477 (1951); *Town of Brookfield v. Brookfield*, 274 Wis. 638, 80 N.W. 2d 800 (1957). Other jurisdictions have held that signatures may not be withdrawn once a sufficient petition has been filed with the governing board of a municipality. *E.g., City of Roanoke v. County of Roanoke*, 214 Va. 216, 198 S.E. 2d 780 (1973). Still others have taken a middle approach and held that petitioners

may not withdraw once the governing body has commenced affirmative action upon the petition, *e.g.*, by holding a required public hearing. *E.g., State v. City of Phoenix*, 74 Ariz. 46, 243 P. 2d 766 (1952).

[4]   We think, after considering the different approaches taken to this question, that, absent legislative directive, the first approach is the better one: petitioners may withdraw at any time up until the governing municipal body has taken action upon the petition by enacting an ordinance annexing the area described in the petition. This rule is "much more likely to get at the real and mature judgment of the voters, and it is calculated to discourage a hasty presentation of a petition for signatures without a full disclosure of the real merits of the question." *County Ct. of DeKalb County v. Pogue*, 115 Ill. App. 391, 400, *affirmed* in *Kinsloe v. Pogue*, 213 Ill. 302, 72 N.E. 906 (1904).

[5]   Having concluded that the withdrawals were valid, we now must consider what legal effect those withdrawals have on the Newton annexation ordinance adopted 3 May 1978. The superior court ruled that the entire ordinance was void, and with this ruling we agree.

"The judicial decisions are in accord in declaring that the essential provisions of the law touching the sufficiency of the petition in proceedings to change corporate boundaries must be followed, . . . . [A]n adequate petition is commonly regarded as an essential procedural requirement, without which no jurisdiction is conferred on the tribunal empowered to act. In other words, a petition sufficient according to the requirements of the statutes is jurisdictional." *McQuillin, supra*, at § 730, pp. 424-26. *See Idol v. Hanes, supra;* 62 C.J.S., Municipal Corporations, § 56, p. 158. The annexation ordinance adopted by Newton was founded upon a single voluntary petition. For purposes of clarity the description of the area to be annexed was divided into a Tract I and a Tract II both contiguous to Newton but not to each other. When the plaintiffs in *Allman v. Newton* withdrew from the petition, which we have held they were entitled to do, the petition was rendered statutorily insufficient in an essential respect. It no longer contained the signatures of all owners of real property in the area proposed to be annexed. G.S. § 160A-31(a). The City of Newton was, therefore, without jurisdiction to take any further action on the petition as submitted.

It nonetheless proceeded to enact an ordinance annexing all of the area described in the petition. Appellant-Newton, anticipating our holding with respect to the right of withdrawal, would now have this Court modify the petition in such a fashion as to make it conform to the requirements of the statute. This it would have us to do by excising from the petition the property owned by those who withdrew and the property beyond theirs, which was rendered noncontiguous to the City of Newton by their withdrawal. Appellant-Newton would, in effect, have this Court treat the petition as one for annexation of *"all or part"* of the area described in it.

The provisions of the voluntary annexation by petition statute, when read in conjunction with the provisions of the involuntary annexation statutes, preclude our undertaking Newton's proposed equitable modification of the petition. G.S. § 160A-37(e) (specifying procedures for involuntary annexation by cities of less than 5000) and G.S. § 160A-49(e) (specifying procedures for involuntary annexation by cities of 5000 or more) provide that within a specified time period after the public hearing on the annexation proposal, "the governing board shall have authority to adopt an ordinance extending the corporate limits of the municipality to include *all, or such part,* of the area described in the notice of public hearing. . . ." (Emphasis added.) G.S. § 160A-31(d) provides, however, that "[u]pon a finding that (a petition for voluntary annexation) meets the requirements of (G.S. § 160A-31) the governing board shall have the authority to pass an ordinance annexing *the territory described in the petition."* (Emphasis added.) If the General Assembly had intended to authorize cities proceeding pursuant to a petition for voluntary annexation to annex merely a part of the area described in the petition, it would have so provided as it has explicitly done in G.S. §§ 160A-37(e) and 160A-49(e). The absence of such statutory authorization, in light of the explicit provisions for it in the involuntary annexation statutes, is cogent evidence that the General Assembly intended a petition for voluntary annexation to stand or fall as a unity. The three statutes are clearly *in para materia.* 2A *Sutherland Statutory Construction,* § 51.03, p. 298 (4th ed. 1973). Moreover, G.S. § 160A-31 was first enacted substantially as it appears today by 1959 N.C. Sessions Laws, Ch. 713. During the same session of the Legislature, G.S. §§ 160A-33

through 44 and G.S. §§ 160A-45 through 56, as other component parts of a general rewrite of the municipal annexation statutes, were enacted in substantially the same form as they appear today, including the provisions in G.S. § 160A-37(e) and G.S. § 160A-49(e) quoted above. Our holding in this respect obviates discussion of appellant-Newton's multifarious theories by which it contends that certain parts of its annexation ordinance are valid.

The grant of summary judgment in favor of plaintiffs in *Allman v. Newton* and the grant of summary judgment in favor of plaintiff in *Conover v. Newton* declaring the entire Newton annexation ordinance to be void are affirmed.

We now turn to consideration of the assignments of error by petitioner-appellants in *In Re: Annexation Ordinance of Conover* to the superior court's judgment concluding that Conover's involuntary annexation proceeding complied with all requirements of G.S. §§ 160A-33 through 44.

In an annexation proceeding under Article 4A, Part 2 of Chapter 160A of the General Statutes, Annexation by Cities of Less than 5,000, the record of the proceedings must show *prima facie* complete and substantial compliance with the applicable provisions of the statutes.

"Where an appeal is taken from an annexation ordinance and a petition has been filed requesting review of the annexation proceedings, and the proceedings show *prima facie* that there has been substantial compliance with the requirements and provisions of the Act, the burden is upon petitioners to show by competent evidence failure on the part of the municipality to comply with the statutory requirements as a matter of fact, or irregularity in proceedings which materially prejudice the substantive rights of petitioners." *In Re Annexation Ordinance*, 255 N.C. 633, 642, 122 S.E. 2d 690, 697 (1961). *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681 (1961).

This burden is placed on petitioners because it is presumed as a general rule that:

". . . a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of pro-

moting the public good and protecting the public interest. [Citation omitted.] The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . .' " *In Re Annexation Ordinance*, 284 N.C. 442, 452, 202 S.E. 2d 143, 149 (1974).

The superior court's review, pursuant to G.S. § 160A-38, of an involuntary annexation proceeding is limited in scope to the following. (1) Did the municipality comply with the statutory procedures? (2) If not, will petitioners "suffer material injury" by reason of the municipality's failure to comply? (3) Does the character of the area specified for annexation meet the requirements of G.S. § 160A-36 as applied to petitioners' property? G.S. §§ 160A-38(a) and (f). *In Re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971). Our limited role now is to review the record and the court's findings of fact and conclusions of law to determine whether or not such findings and conclusions with respect to the first two of these are supported by competent evidence.

Petitioners raise three questions on this appeal. They contend there was error in the superior court's conclusions of law: (1) that an error in the metes and bounds description of the area proposed to be annexed was not fatal to the validity of the annexation ordinance; (2) that the ordinance complied with G.S. § 160A-36(d), which requires that natural topographic features be used as boundaries whenever it is practical to do so; and (3) that the procedure by which an amendment to the ordinance was adopted complied with the statutory requirements relative thereto. For the reasons stated below, we find these assignments of error to be without merit.

[6] The metes and bounds description in the Resolution of Intent to annex adopted by Conover on 3 April 1978 failed to close because a relatively small piece of property owned by Mrs. F. A. Abernethy was not included within it. Mrs. Abernethy did not join in the petition for review. It is, therefore, difficult to see how

any petitioner meets the "material injury" requirement in relation to this error in the proceedings. Nevertheless, this error was amply cured by the fact that the metes and bounds description in the Resolution of Intent and the published notice of public hearing made full reference to a map, filed in the office of the Clerk of the City of Conover and available for public inspection as of 3 April 1978, of the area proposed to be annexed. This map and the map published in the newspaper notice of the public hearing show the property owned by Mrs. F. A. Abernethy as included within the area proposed to be annexed. We think, in this instance, that there was sufficient compliance with the requirements of G.S. § 160A-37 that the Resolution of Intent "describe the boundaries of the area under consideration. . . ." "[S]light irregularities will not invalidate annexation if there has been substantial compliance with all essential provisions of the law." *In Re Annexation Ordinance*, 278 N.C. 641, 648, 180 S.E. 2d 851, 856 (1971).

[7] The superior court made findings of fact that:

"The boundary of the area described in the Annexation Ordinance consists of and follows valleys, streets, branches, creeks, ridge lines, major graded areas which have settled and become natural topographic features, drainage areas, identifiable woods lines with drainage areas and identifiable hedge rows with drainage areas, and railroads; that exclusive of the portion of the boundary that joins the existing Conover City limits, the boundary consists of approximately 9,950 feet of natural boundaries, approximately 12,075 feet of boundaries consisting of streets or following just off of streets, approximately 1,400 feet along a major railroad, approximately 1,775 feet along identifiable prominent tree lines or hedge rows with drainage areas, approximately 1,375 feet. of major graded areas which have become natural topographic features, and approximately 2,500 feet associated with property lines only; that much of the boundary located with reference to streets and railroads has boundaries consisting of natural topographic features; that where Highway 64-70, State Road 1731, State Road 1732, State Road 1734, and the Southern Railroad is used as a boundary that the same consists of a natural topographic feature in that they constitute a continuing ridge line and that where these roads have been used as a boundary the Annexation Ordinance includes de-

veloped property located on both sides of the road; that the Conover governing board has, wherever practical, used natural topographic features as the new City limits boundary and where a street has been used as a boundary has included within the annexation area developed land on both sides of the street."

From these findings of fact the court concluded as a matter of law that Conover's annexation ordinance met the requirements of G.S. § 160A-36(d), which provides:

"In fixing new municipal boundaries, a municipal governing board shall, wherever practical, use natural topographic features such as ridge lines and streams and creeks as boundaries, and if a street is used as a boundary, include within the municipality developed land on both sides of the street."

The court's findings of fact and conclusions of law with respect to these requirements are amply supported by the evidence presented at the hearing. Conover presented Mr. Charles H. Davis, a consultant in urban planning, as a witness at the hearing. Mr. Davis had been hired by Conover, after passage of the annexation ordinance, to review it and the procedures employed. His testimony reveals that he examined the boundary of the area annexed and provides plenary evidence to support the court's findings and conclusions with respect to compliance with G.S. § 160A-36(d). At the request of petitioners, the court as well (sitting as a jury in this instance) had a view of portions of the boundary. Petitioners called only one witness on this issue, Conover City Engineer Mr. Clifford Smithson. Although Mr. Smithson's testimony on direct examination provides some support for petitioner's contentions, on cross-examination he revealed that he had made only a limited inspection of portions of the boundary and was totally unfamiliar with others. The requirements are only that topographic features be used *wherever practical*, and if a street is used as a boundary that developed property on both sides of it be included. The evidence presented amply supports the court's conclusions of substantial compliance with this part of the statute.

[8] G.S. § 160A-37(e) provides that after holding the required public hearing on an involuntary annexation proposal, the govern-

ing board of a municipality shall take into consideration facts presented at such hearing and "shall have authority to amend the report required by G.S. § 160A-35 to make changes in the plans for serving the area to be annexed so long as such changes meet the requirements of G.S. § 160A-35." There is no requirement that the amended report be available for public inspection for any particular amount of time before final action is taken on the annexation proposal, nor is there any requirement that a second public hearing be held on the report as amended. *Williams v. Town of Grifton*, 22 N.C. App. 611, 207 S.E. 2d 275 (1974).

After holding the required public hearing on 3 May 1978, the Conover City Council met on 11 May 1978 and adopted certain amendments to the report prior to passage of the annexation ordinance itself. These amendments were made primarily to reflect minor changes in the financing of services for the then current fiscal year through 30 June 1978 in the area proposed to be annexed and to reflect a reduction in size of the area to be annexed. Minor amendments of this type are well within the ambit of the statutory authorization for amendment in G.S. § 160A-37(e). This assignment of error is also overruled.

For the reasons stated above we affirm the superior court's conclusion of law that the Conover annexation ordinance of 11 May 1978 was valid.

We affirm the judgment of the trial court in each of the three actions.

Affirm.