An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-901

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STEPHEN PIGNATIELLO,
      Plaintiff,

v.                                    Henderson County
                                      No. 10 CVS 1303
SYNOVUS FINANCIAL CORP. d/b/a
NATIONAL BANK OF SOUTH CAROLINA,
and SEVEN FALLS, LLC,
      Defendants.


Appeal by plaintiff from judgment entered 17 December 2012 by Judge Mark E. Powell in Henderson County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *David R. Payne, P.A., by David R. Payne, for plaintiff-appellant.*

> *Nelson Mullins Riley & Scarborough, LLC, by T. William McGee, III, and Jeffrey W. Norris & Associates, PLLC, by Jeffrey W. Norris, for defendant-appellee Synovus Financial Corporation.*


BRYANT, Judge.


Where the record fails to support plaintiff's assertion that defendant Synovus Financial Corporation acted as a developer or an agent thereof, we affirm the trial court's grant of summary judgment dismissing plaintiff's claims alleging a

violation of the Interstate Land Sales Full Disclosure Act. Where plaintiff fails to present to the trial court his argument that summary judgment is improper because there are outstanding discovery requests, this argument is not preserved for our review.

On 3 August 2010, plaintiff Stephen L. Pignatiello filed a verified complaint against defendants Synovus Financial Corporation d/b/a The National Bank of South Carolina (hereinafter "NBSC") and Seven Falls, LLC, in Henderson County Superior Court. The complaint alleged that on 29 November 2007, Pignatiello signed a consumer loan note / security agreement for a principal amount of $650,000.00 payable to NBSC. Secured by a Deed of Trust, the loan was acquired to purchase a real estate lot in an undeveloped residential area.

In 2006, NBSC loaned to Seven Falls, LLC, in excess of $25,000,000.00 for the purpose of acquiring, improving, developing, marketing, and selling real estate on 1,600 acres of undeveloped land in Henderson County to be known as the Seven Falls Golf and River Club (hereinafter "the Development"). At the time Pignatiello filed his 2010 complaint, there had been little or no development of the 1,600 acres purchased. Pignatiello alleged that he has lost the use and enjoyment of

his property and that the property value of the lot purchased at the time his complaint was filed was "grossly below the original appraisal value used by NBSC."

In his complaint, Pignatiello alleged that both Synovus Financial Corp. and Seven Falls, LLC, were responsible for the failure to make progress on the Development. Pignatiello alleged that NBSC and Seven Falls, LLC, were "essentially co-owners" of the 1,600 acres, intricately intertwined in the development, marketing, financing, and sale of lots at the Development for a joint profit. He further alleged that: "NBSC lent its name and prestige to the sales efforts assuring prospective lot owners at the Development that it was fully funding the development and promised infrastructure"; "NBSC bank officers and employees solicited consumers, including [Pignatiello], to consider buying lots at the development"; NBSC and Seven Falls, LLC, hosted events in 2007 and 2008 to induce consumers to purchase lots in the Development; "NBSC's presence and sponsorship at the . . . event[s] showed its support and backing of the Seven Falls' financial viability; "[b]ecause of NBSC's and Seven Falls' joint efforts, many consumers at [these] event[s] were unable to distinguish agents of NBSC from agents of Seven Falls." And finally, Pignatiello alleged that "[p]rior

to financing Seven Falls, NBSC knew or should have known that Seven Falls was inexperienced and undercapitalized and therefore knew or should have known that [Pignatiello's] purchase of a lot in the Seven Falls development would be a serious financial risk."

Pignatiello sought recovery from Synovus Financial Corp. and Seven Falls, LLC, for violations of the Interstate Land Sales Full Disclosure Act, breach of contract, breach of fiduciary duty and constructive fraud, fraud in the inducement, fraudulent misrepresentation, negligent misrepresentation, unfair and deceptive trade practices, negligence, civil conspiracy, and defamation. Pignatiello also sought injunctive relief as to NBSC; however, on 1 December 2010, Pignatiello agreed to withdraw all requests for injunctive relief.

In answer to Pignatiello's complaint, Synovus Financial Corp. submitted a counterclaim alleging that Pignatiello was in default under the terms of the promissory note requiring repayment of the loan. Synovus Financial Corp. sought to recover the principal amount of $650,000.00, plus interest of $52,431.71 plus $133.561 per day from 6 December 2010, late fees, costs, and attorney's fees.

On 23 August 2012, Synovus Financial Corp. submitted a motion for summary judgment or in the alternative, a motion to enforce a mediated settlement agreement reached between the parties on 29 March 2012. In an accompanying memorandum, Synovus Financial Corp. argued that all of Pignatiello's claims should be dismissed because he failed to plead or establish that there existed a joint venture between Synovus Financial Corp., the lender, and Seven Falls, LLC, the developer. The matter was heard 1 October 2012 during the civil session of Polk County Superior Court, the Honorable Mark Powell, Judge presiding. On 26 October 2012, the trial court entered an order granting summary judgment in favor of defendants Synovus Financial Corp. and Seven Falls, LLC, with respect to all claims asserted in the complaint. Furthermore, the trial court granted summary judgment "in favor of Defendants . . . with respect to all claims asserted in the counterclaim . . . ." Pignatiello appeals.

_____

On appeal, Pignatiello raises the following issues: whether the trial court erred in granting summary judgment (I) by determining that Synovus Financial Corp. was not a developer; and (II) where there were outstanding discovery requests.

*I*

Pignatiello argues that the trial court erred in granting summary judgment in favor of Synovus Financial Corp. as there was sufficient evidence suggesting that Synovus acted as a developer for purposes of the Interstate Land Sales Full Disclosure Act. We disagree.

We review a trial court's grant of summary judgment de novo. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006). Summary judgment is to be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. ' 1A-1, Rule 56(c) (2013).

> If the [party moving for summary judgment] satisfies its burden of proof, the non-moving party cannot rest upon [his] pleadings, and must set forth specific facts showing that there is a genuine issue for trial. The opposing party need not convince the court that he would prevail on a triable issue of material fact but only that the issue exists.

*Strickland v. Lawrence*, 176 N.C. App. 656, 661-62, 627 S.E.2d 301, 305 (2006) (citations and quotations omitted).

The Interstate Land Sales Full Disclosure Act ("ILSFDA") is

codified at 15 U.S.C. ' 1701 *et seq.* "[The Act] is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 778 (1976). "These disclosure requirements are designed to protect purchasers by ensuring that prior to purchasing certain types of real estate, a buyer is apprised of the information needed to insure an informed decision." *Long v. Merrifield Town Ctr. Ltd. P'ship*, 611 F.3d 240, 245 (4th Cir. 2010) (citation and quotations omitted). "[S]ince the Act provides for liability for misstatements or omissions in the statutorily required Statement of Record and Property Report or in statements made to offerees of lots in a subdivision, logically the statute should be interpreted to include within its scope only those engaged in the selling effort." *Bartholomew v. Northampton Nat. Bank of Easton*, 584 F.2d 1288, 1293 (3d Cir. 1978).

In his complaint, Pignatiello raises five claims that defendants violated the ILSFDA as codified at 15 U.S.C. '' 1703(a)(1)(B), 1703(a)(2)(A), 1703(a)(2)(B), 1703(a)(2)(C), 1703(a)(2)(D).

Section 1703 of Title 15, entitled "Requirements respecting sale or lease of lots," imposes restrictions upon developers and agents. *See* 15 U.S.C. ' 1703(a) (2012) ("Prohibited activities[.] It shall be unlawful for any developer or agent . . . .").

> For the purposes of [Chapter 42], the term--
>
> . . .
>
> (5) "developer" means any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision;
>
> (6) "agent" means any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services[.]

*Id.* § 1701(5), (6).

In his complaint, Pignatiello makes the following pertinent allegations:

> 9.    NBSC and Seven Falls acted in concert with each other and each is a "developer" or "agent" as defined by ILSA.
>
> . . .
>
> 13. NBSC and Seven Falls were intricately intertwined in the development, marketing, financing, and sale of lots at the Development and intentionally associated themselves to engage in and carry out a

> business venture for profit (as essentially co-owners) for which they combined their efforts, property, money, skill, and knowledge.

However, these are conclusory allegations and "Rule 56(e) [of our North Carolina Rules of Civil Procedure] clearly precludes any party from prevailing against a motion for summary judgment through reliance on . . . conclusory allegations unsupported by facts." *Nasco Equip. Co. v. Mason*, 291 N.C. 145, 152, 229 S.E.2d 278, 283 (1976). The complaint provided the following allegations of specific conduct in support of Pignatiello's ILSFDA claims.

> 20. NBSC lent its name and prestige to the sales efforts assuring prospective lot owners at the Development that it was fully funding the development and promised infrastructure.

> 21. NBSC bank officers and employees solicited consumers, including Plaintiff, to consider buying lots at the Development.

> . . .

> 25. . . . [O]n or about June 9, 2007, NBSC and Seven Falls hosted the Grand Opening of the Seven Falls Development on the grounds of Seven Falls in order to induce consumers into purchasing lots at Seven Falls. . . .

> 26. NBSC's presence and sponsorship at the Grand Opening event showed its support and backing of the Seven Falls development and was an effort to convince consumers, including Plaintiff, of Seven Falls

financial viability. Because of NBSC's and Seven Falls' joint efforts, many consumers at this event were unable to distinguish agents of NBSC from agents of Seven Falls.

. . .

29. On or about June 7, 2008, NBSC and Seven Falls hosted the Grand Opening of the Arnold Palmer Golf Academy at Seven Falls.

. . .

31. In or about October 2008, as part of Defendants' scheme to induce consumers to purchase lots and/or Villas at Seven Falls, NBSC and Seven Falls hosted another promotional event at the Development . . . as part of Defendants' scheme to induce consumers such as Plaintiff to purchase[] lots and/or Villas at Seven Falls. . . .

. . .

41. Synovus and NBSC made these promises and assurances to Plaintiff and others in participation and in furtherance of Defendants' scheme.

On appeal, Pignatiello asserts that

NBSC solicited lot-purchasers of Seven Falls by inviting them to informal sessions and lavish social gatherings. The bank provided these interested parties with free food and drink, introduced them to celebrities, and entertained them with professional musicians. Even more telling, is the fact that NBSC placed its name and corporate logo adjacent to that of Seven Falls on numerous marketing materials and financing offers. Further, NBSC funded production of an informational DVD series aimed at assuring lot owners that the project was well

underway.

Pignatiello argues that NBSC "held itself out as a partner, or at least a backer, in connection with the Seven Falls Development." However, the record does not support Pignatiello's assertion that Synovus Financial Corp. acted as a developer or an agent of Seven Falls.

The record reflects that in response to Pignatiello's interrogatories, Synovus Financial Corp. acknowledged that "NBSC participated in on site [sic] events paid for and put on exclusively by Seven Falls where various lenders were invited to advertise their rates. Other than that, NBSC took no part in the development or proposed amenities of Seven Falls." Synovus Financial Corp. further responded that "NBSC loaned money to Seven Falls and Stephen L. Pignatiello. NBSC received no monies other than those expressly required by and through the terms of the loan agreements." Pignatiello makes no showing that Synovus Financial Corp. and Seven Falls were involved in a joint venture or shared any profits from the same. Synovus Financial Corp. also draws the attention of this Court to Pignatiello's deposition testimony in which he testified that he went to only one "sales-type event" for the Seven Falls Development and "I think it was after I purchased a lot[.]" Pignatiello has failed

to submit authority or evidence to support his conclusory assertion.

Reviewing the allegations, responses to interrogatories, and memorandum in support of Synovus Financial Corp.'s motion for summary judgment, we find no support for Pignatiello's assertion that Synovus Financial Corp. acted as a developer or agent of a developer promoting the Seven Falls Golf and River Club residential community. Therefore, we affirm the trial court's order granting summary judgment against Pignatiello as to his claims that Synovus Financial violated the ILSFDA.

*II*

Next, Pignatiello argues that the trial court improperly granted summary judgment where Synovus Financial Corp.'s failure to answer discovery questions prejudiced him and impeded his ability to procure evidence. Pignatiello argues that the discovery requests were targeted at uncovering the working relationship between NBSC and Seven Falls, LLC, and that by failing to answer his discovery requests, Synovus Financial Corp. undermined the outcome of the case. We dismiss this argument.

Pignatiello cites *Conover v. Newton*, 297 N.C. 506, 256 S.E.2d 216 (1979), for the proposition that "[o]rdinarily it is

error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Id.* at 512, 256 S.E.2d at 220 (citations omitted).

On appeal, Pignatiello points out that during the hearing on Synovus Financial Corp.'s motion for summary judgment, counsel for Synovus Financial Corp. argued that Pignatiello had completely failed to discover or present any evidence.

> [Counsel for Synovus Financial Corp.:] The basis of summary judgment, our motion for summary judgment against the plaintiff's claims is that after 26 months since the Complaint was filed in this case, it has been pending almost 27 months now, the plaintiff has completely failed to discover or present any evidence that sufficiently plead or prove the claims that are asserted against Synovus Bank. Therefore, Judge, we believe that summary judgment as to all the first party claims are in order.

We note that during the hearing, Pignatiello failed to argue that his inability to procure evidence supporting his claims was a result of Synovus Financial Corp.'s failure to answer discovery requests. Therefore, this argument has not been preserved for our review. *See* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection,

or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."). Accordingly, we dismiss this argument.

Affirmed in part; dismissed in part.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).