HILDA GIBBS v. DEPARTMENT OF HUMAN RESOURCES

No. 8510SC109

(Filed 5 November 1985)

1. **Public Officers § 12— State employee—meaning of reduced in position**

A State employee has been reduced in position within the meaning of G.S. 126-35 when the employee is placed in a lower pay grade and not when the employee has been given fewer responsibilities after a department or staff reorganization. Since the employee in this case was not reduced in position, a finding of just cause was not required.

2. **Public Officers § 12— State Personnel Commission—decision on record after hearing officer resigned**

   Pursuant to 25 N.C.A.C. 1B.0339, the chief hearing officer of the State Personnel Commission could properly render a decision based on the record when the hearing officer who had heard the testimony resigned before rendering a decision where the demeanor of the witnesses was not a factor in the decision.

APPEAL by petitioner from *Barnette, Judge.* Order entered 7 September 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 18 September 1985.

Petitioner, a State employee covered by the State Personnel Act, filed an appeal with the State Personnel Commission in which she alleged that she had been demoted without just cause in violation of G.S. 126-35. The chief hearing officer of the State Personnel Commission, after reviewing the transcript of testimony and arguments and making findings of fact, ruled that she had not been demoted; thus, a finding of just cause was not required. She appealed to the State Personnel Commission, which adopted and affirmed the decision of the chief hearing officer. Petitioner then filed a petition for judicial review in Wake County Superior Court. From an order affirming the decision of the State Personnel Commission, petitioner appealed to this Court.

*David M. Rouse, for petitioner appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Ann Reed, for the respondent appellee.*

JOHNSON, Judge.

Two issues are presented by this appeal: (1) whether a finding of just cause was required; and (2) whether the chief hearing officer properly rendered a decision even though he did not hear the testimony, the hearing officer who heard the testimony having resigned before rendering a decision.

[1] The first issue we address is whether a finding of just cause was required in this case. G.S. 126-35 provides in pertinent part:

No permanent employee subject to the State Personnel Act shall be discharged, suspended, or reduced in pay or position, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with

a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights.

Thus, according to the plain language of G.S. 126-35, a finding of just cause is not required unless the employee is discharged, suspended, or reduced in pay or position. The question to be resolved in the present case is whether petitioner was reduced in pay or position. If so, a finding of just cause was required and the matter must be remanded for such finding.

Petitioner did not except to the Commission's findings of fact or to the trial court's finding that these findings were supported by competent evidence. These findings are therefore binding. *Horton v. Redevelopment Commission*, 262 N.C. 306, 137 S.E. 2d 115 (1964). The findings of fact show the following:

Petitioner is a permanent state employee employed by respondent at Caswell Center (Center) in Kinston. She had been employed at the Center since July 1968. Prior to 2 June 1980, petitioner was Director of Community Services, having served in this capacity since 1 March 1976. As Director of Community Services, petitioner was a member of the Executive Committee, a group of top managerial employees who reported directly to the Center director. Petitioner supervised numerous employees and was responsible for several program areas.

The classification system title for petitioner's position was "Mental Health Unit Administrator III" at paygrade 72-T. The "T" designation referred to the fact that this was a temporary, rather than a permanent, assignment to this classification and paygrade. In 1978 and 1979, the Office of State Personnel and the respondent's classification personnel conducted a statewide study of all "outreach" positions in order to establish permanent job classifications, specifications and paygrades. Petitioner's position was included in this study.

In July 1979, Dr. Eric Zaharia became Center Director. In November 1979, Dr. Zaharia and petitioner began the "Work Planning and Performance Review" process mandated by State personnel policy. This process involved the setting of goals and objectives for petitioner to attempt to achieve.

In March 1980, Dr. Zaharia negotiated with the Office of State Personnel and respondent's classification staff to "reallocate" petitioner's position from Mental Health Unit Administrator III to Outreach Specialist II with the understanding that petitioner's position would be redesigned to fit that class, Outreach Specialist, and to be organizationally sound within the Community Services Department. Dr. Zaharia also arranged for the establishment of a new Community Services Director position, which was in the Outreach Director class and at a higher paygrade than the Mental Health Unit Administrator III position petitioner had held as Community Services Director.

On 18 April 1980, petitioner and Dr. Zaharia met to discuss her progress in the Work Planning and Performance Review process. Dr. Zaharia expressed satisfaction with petitioner's progress in half of the areas and dissatisfaction with her progress in others. At this meeting Dr. Zaharia informed petitioner of the results of the classification study. Dr. Zaharia informed petitioner that her position was being reallocated to the Community Outreach Specialist class, and that her paygrade and salary would remain the same. Her new position would be Coordinator of Client Services, a position which previously had existed but had not been utilized.

The next week, Dr. Zaharia informed petitioner that the Community Services Director job, which had been reallocated to the Outreach Director class at a higher paygrade, remained open and that he would examine her performance over the next few months to determine whether or not to promote her into this position. During the week of 26 May 1980, Dr. Zaharia decided not to promote petitioner into this position, but selected another employee to fill the Community Services Director job. He informed petitioner of his decision on 30 May 1980.

After her reallocation to Coordinator of Client Services, petitioner had fewer responsibilities and fewer employees to supervise. She also reported to the Community Services Director rather than to the Center Director.

The Commission further found as facts that a "reallocation" is "the movement of an established position from one class to another, as the result of a classwide study or a review of that position" and that petitioner's position had been reallocated

laterally in that both positions were at paygrade 72. It concluded that petitioner had not been reduced in pay or position because (1) G.S. 126-35 deals with demotion in a disciplinary context, and it was clear that petitioner's reallocation was not a disciplinary action but resulted from a classification study and Dr. Zaharia's evaluation of petitioner's leadership abilities; and (2) petitioner's salary and paygrade remained the same. Since petitioner was not reduced in pay or position, it concluded a finding of just cause was not required. We agree with the Commission and hold its conclusions of law were correct and supported by the findings of fact.

The State Personnel Commission is required under G.S. 126-4(1) to establish policies and rules governing a position classification plan which provides for the classification and reclassification of all positions subject to the State Personnel Act according to the duties and responsibilities of each position. These policies and rules are contained in the State Personnel Manual.

A "position" is defined in the State Personnel Manual as "[a] group of duties and responsibilities to be performed by one individual. . . ." 25 N.C.A.C. 1F.0104(1). A "class" is defined in the Manual as "[a] specific group of positions which are so similar in duties and responsibilities that they justify common treatment in selection, compensation and other employment processes and the same descriptive title may be used to designate all positions or jobs in the class...." 25 N.C.A.C. 1F.0104(2). Each class is assigned a paygrade on the State of North Carolina Salary Scale. Each paygrade consists of nine steps, each step representing an approximate 5% increase in salary. The paygrades are numbered from 50 to 96. The higher the number of the paygrade, the higher the hiring salary.

We observe from the State Salary Schedule that the salary at the higher steps of the lower paygrades are equivalent to or equal to the hiring rate or lower steps of higher paygrades. Hence, one's paygrade could be lowered but one's salary could remain the same.

Petitioner argues that because she has fewer responsibilities, she has been reduced in position and therefore a finding of just cause was required. To adopt such an interpretation of the statute, however, would severely hamper and hinder managerial

decisions. Anytime there was a reorganization in a department or staff, a person who had fewer responsibilities after the reorganization could claim a reduction of position and delay such reorganization. We do not believe the General Assembly intended such a result. We therefore hold that one has been reduced in position within the meaning of G.S. 126-35 when an employee is placed in a lower paygrade. The findings of fact clearly establish that petitioner remained at the same paygrade. Since she was not reduced in position, a finding of just cause was not required.

[2]    The remaining issue is whether the chief hearing officer properly rendered a decision without having heard any testimony, the hearing officer who heard the testimony having resigned before rendering a decision. The rules of the Commission provide that the person conducting the hearing shall prepare a proposed decision unless such person becomes unavailable, in which event a person who has read the record may prepare the decision "unless the demeanor of witnesses is a factor." 25 N.C.A.C. 1B.0339. Here, the demeanor of the witnesses was not a factor in determining whether petitioner was reduced in pay or position. The chief hearing officer therefore properly rendered a decision based upon the record.

For the foregoing reasons, the order appealed from is

Affirmed.

Judges EAGLES and PARKER concur.