IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-79

Filed 4 June 2024

Office of Administrative Hearings, No. 21 OSP 02274

CARLOTTA DIXON, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Appeal by petitioner from Final Decision entered 22 November 2021 by Administrative Law Judge Karlene S. Turrentine ("ALJ") in the Office of Administrative Hearings ("OAH"). Heard in the Court of Appeals 15 May 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Daniel K. Kovas and Assistant Attorney General Grace R. Linthicum, for respondent-appellee.*

*Bailey & Dixon, LLP, by Philip A. Collins, for petitioner-appellant.*

ARROWOOD, Judge.

Carlotta Dixon ("petitioner") appeals from Final Decision entered 22 November 2021. For the following reasons, we affirm the ALJ's decision.

I.      Background

Petitioner was hired by North Carolina Department of Health and Human Services' ("DHHS") Division of Social Services ("DSS") in 1999. In 2004, petitioner was promoted to the position of "Social Services Program Administrator I" with a salary grade of 74. The salary grade for that position was revised to a salary grade

of 75 in December 2005.

In 2015, a classification and pay plan project was initiated by the Office of State Human Resources ("OSHR"). Petitioner received an email in January 2016, notifying her that DHHS and OSHR had "recommended new job titles for all agency positions in the new statewide compensation system." The email further provided petitioner "the proposed allocations for [her] review" in an attachment. The attachment listed petitioner's proposed job title as "Human Services Program Manager II."

The new classification and pay plan system was implemented in 2018, and employees were notified of their classification titles and pay grades via memo in May of that year. Petitioner's memo stated that her new classification was "Business Officer II" with a pay grade of GN13. The notice further stated, "With the implementation of the new Statewide Compensation System, no employee's salary will be reduced . . . . Your salary will remain the same."

Before the new classification and pay plan system was implemented, petitioner earned $73,259.00 annually as a "Social Services Program Administrator I." According to OSHR's 2017 Pay Plan Book, the salary range for that position was between $48,195.00 and $81,392.00. Immediately following her reclassification in June 2018 as a "Business Officer II," petitioner's annual salary remained at $73,259.00.[1] As of 2018, the salary grade for that position was GN13 with a range

---

[1] Based on legislative pay increases, petitioner's salary increased to $74,724.00 in July 2018 and $76,592.00 in July 2019 as a "Business Officer II."

between $48,051.00 and $86,431.00. According to petitioner, the paygrade for a "Human Services Program Manager II" was GN15 with a salary range between $56,046.00 and $100,814.00.

After petitioner received the memo classifying her new position as "Business Officer II," she complained to her supervisor, Mr. Richard Stegenga ("Mr. Stegenga"). Mr. Stegenga then sought to have petitioner's job classification reconsidered and submitted a written request for her position to be classified as "Program Manager II" with a salary grade of GN16. The request was denied.[2]

According to petitioner, five DSS employees held the position of "Social Services Program Administrator I" before the new system's implementation, but only petitioner's position was reclassified as "Business Officer II." The other four employees were reclassified as a "Human Services Program Manager II."

On 2 January 2019, petitioner filed an informal Equal Employment Opportunity ("EEO") complaint, alleging harassment and retaliation by Mr. Stegenga and Mr. Michael Becketts ("Mr. Becketts"), DHHS's Senior Director for Policy and Planning. The complaint alleged that the retaliation involved compensation. The complaint requested as a remedy that the harassment and retaliation stop, and that petitioner's "position and Unit be moved organizationally from direct supervision of

---

[2] According to a November 2018 email from DSS's Human Resource Manager, "after the DHHS subject matter experts reviewed the position description, org chart and justification, it was not recommended for the Proposed Program Manager II recommendation or in a managerial position. . . . Therefore, the action was completed and the position will remain[ ] as a Business Officer II . . . ."

Mr. Stegenga and Mr. Becketts to report directly to Assistant Secretary for County Operations for Human Services, Ms. Susan Osborne."

On 6 March 2019, petitioner received written notice regarding a change in her supervisor and work assignment. The notice included the following:

> This is to inform you that effective March 11, 2019, your Supervisor will be Susan Osborne, Assistant Secretary for County Operations for Human Services. Your duties are aligned with your working title and your revised job description is being presented at the time of this notice.
>
> Your primary job duties will include Compliance Coordination, Constituent Services Coordination, Repatriation Program Coordination and SERT Coordinator for Division of Social Services. This change is a result of reorganization within this Division to best serve citizens, counties and other stakeholders that we support in our work. This is a permanent move and will allow the Division to comply with regulations, organize our work and meet the goals of the Department.
>
> Your classification continues as Business Officer II Grade 13 and your salary will remain the same.

Petitioner initialed the memo, indicating that she "accept[ed] the change in [her] work supervision and work assignment" and that she "underst[oo]d that [her] classification as Business Officer II and salary w[ould] remain the same." According to DHHS's Deputy Secretary for Employment, Inclusion, and Economic Stability Tara Myers, the change in petitioner's duties "was not disciplinary in any way"; rather, the change was due to petitioner's "duties and scope of work [being] better aligned with Ms. Osborne's responsibilities and the work she supervised."

Petitioner filed a petition for a contested case hearing on 14 May 2021, alleging that she "was demoted without just cause by being reduced in pay, position, and/or material job duties and responsibilities that are tantamount to a demotion without just cause." Petitioner issued discovery requests to DHHS on 13 July 2021, and DHHS served its responses and objections to those requests on 23 August 2021. On 13 September 2021, DHHS filed a motion for summary judgment and accompanied exhibits, including petitioner's employee history and various documents involving the classification and pay plan system and its implementation. Petitioner filed a motion to compel discovery on 11 October 2021.

DHHS's motion for summary judgment and petitioner's motion to compel discovery were noticed for hearing on 10 November 2021, but the ALJ proceeded with hearing only the summary judgment motion on the grounds that petitioner's motion to compel would be rendered moot if DHHS's motion for summary judgment was granted. Petitioner objected, contending the case was not ripe for summary judgment because DHHS had not produced in discovery communications involving petitioner's position reclassification. The ALJ issued a Final Decision 22 November 2021, granting DHHS's motion for summary judgment.

## II.     Discussion

Petitioner contends that summary judgment was improperly granted because an issue of material fact exists as to whether petitioner was demoted without just cause. Petitioner also contends that summary judgment was prematurely granted

because relevant discovery was pending. We take each argument in turn.

A.     Standard of Review

"We review an ALJ's final decision granting summary judgment de novo, considering all evidence presented in the light most favorable to the non-moving party." *FMSH L.L.C. v. N.C. Dep't of Health & Hum. Servs.*, 279 N.C. App. 157, 160 (2021) (citation omitted). "Summary judgment is properly granted if the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Id.* (cleaned up).

B.     Demotion without Just Cause

Petitioner contends that an issue of material fact remains as to whether DHHS's reclassification of petitioner's position as a "Business Officer II" constituted a disciplinary demotion in violation of N.C.G.S. § 126-35 (2023). We disagree.

Section 126-35 of the North Carolina General Statutes states that no career State employee "shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C.G.S. § 126-35. The North Carolina Administrative Code defines "demotion" as "an assignment to a position with a lower pay grade or a salary reduction in an employee's current position, caused by unsatisfactory performance or a disciplinary action . . . ." N.C.A.C. 1D.0401(a) (2023). A state employee has "the right to appeal a demotion through their agency's internal grievance procedure." *Id.* After an agency decision is made, the state employee may file a contested case in the OAH where the OAH "shall hear and issue a final decision . . . within 180 days from

- 6 -

the commencement of the case." N.C.G.S. 126-34.02(a). The state employee is also entitled to judicial review of that final decision by appeal to this Court. *Id.*

In *Gibbs v. Dep't of Hum. Res.*, the petitioner was reallocated to a different position with "fewer responsibilities and fewer employees to supervise." 77 N.C. App. 606, 609 (1985). The petitioner argued that because her new position had fewer responsibilities, she had been reduced in position and thus a finding of just cause was required. *Id.* at 610. This Court disagreed, explaining "such an interpretation of the statute . . . would severely hamper and hinder managerial decisions. Anytime there was a reorganization in a department or staff, a person who had fewer responsibilities after the reorganization could claim a reduction of position and delay such reorganization." *Id.* at 610–11. The *Gibbs* Court thus held that a demotion pursuant to N.C.G.S. § 126-35 occurs "when an employee is placed in a lower paygrade." *Id.* at 611.

Similarly, in *Winbush v. Winston-Salem State Univ.*, the petitioner, a football and softball coach at Winston-Salem State University, was promised a raise in salary for his coaching accomplishments. 165 N.C. App. 520, 523 (2004). However, before the raise went into effect, the petitioner was relieved of his coaching duties and reassigned as intramural coordinator following a dispute over a summer football camp. *Id.* at 523–24. The petitioner never received the promised raise in salary, but his paygrade status remained the same after reassignment. *Id.* at 524. In applying *Gibbs*, this Court explained that the petitioner was never demoted because his

paygrade remained the same, and "the promised raise in salary had not yet come into effect at the time of his reassignment[.]" *Id.*

Here, petitioner was never placed in the position of "Human Services Program Manager II." Although petitioner received an email in 2016 notifying her about her *proposed job title* as "Human Services Program Manager II" under the impending classification and pay plan system, her assignment to that position never materialized.[3] Upon the new system's implementation in 2018, petitioner was still a "Social Services Program Administrator I." Thus, like in *Winbush*, the proposed or "promised" job classification detailed in the 2016 email had not previously "come into effect at the time of h[er] reassignment" to "Business Officer II." *See Winbush*, 165 N.C. App. at 524. Moreover, like in *Gibbs* and *Winbush*, petitioner's reassignment to "Business Officer II" from "Social Services Program Manager I" did not involve a change in pay. Her salary remained the same, and her pay range on the maximum end increased. Petitioner's claim that she was only one of five "Social Services Program Manager I" employees reclassified as a "Business Officer II" is also not persuasive because, unlike the other four employees, she was never placed in a "Human Services Program Manager II" position—such position was merely proposed to her by email in 2016. Accordingly, petitioner's reassignment to "Business Officer II" was not a demotion pursuant to N.C.G.S. § 126-35, and summary judgment was

---

[3] Even petitioner's affidavit acknowledged that the 2016 email had "recommended new job titles for all agency positions" and that it concerned a "proposed allocation for [her] position . . . ."

not improperly granted by the ALJ.

## C.    Pending Discovery

Petitioner contends that summary judgment was prematurely granted because she was not given the opportunity to obtain evidence relevant to her claim that she was demoted without just cause. We disagree.

"Ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Conover v. Newton*, 297 N.C. 506, 512 (1979) (citations omitted). But this "rule pre-supposes that any information gleaned will be useful." *Manhattan Life Ins. Co. v. Miller Machine Co.*, 60 N.C. App. 155, 159 (1982). Thus, "the trial court is not barred in every case from granting summary judgment before discovery is completed." *Evans v. Appert*, 91 N.C. App. 362, 367–68 (1988) (citation omitted). And doing so "before discovery is complete may not be reversible error if the party opposing summary judgment is not prejudiced." *Hamby v. Profile Prod., LLC*, 197 N.C. App. 99, 113 (2009) (citing *Conover*, 297 N.C. at 512–13).

Here, as discussed above, the record shows that petitioner was never demoted pursuant to N.C.G.S. § 126-35. And petitioner's discovery requests—e.g., identification of personnel who made the reassignment decision and communications regarding the reassignment—are not relevant to that matter. Accordingly, summary judgment was not prematurely granted by the ALJ.

III.   Conclusion

For the foregoing reasons, we affirm the ALJ's order granting summary judgment in favor of DHHS.

AFFIRMED.

Chief Judge DILLON and Judge ZACHARY concur.